IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02216-WJM-KLM

STROH RANCH DEVELOPMENT, LLC, a Colorado limited liability company,

    Plaintiff,

v.

CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 2,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 3,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 4,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 5,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 6,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 7,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 8,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 9,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 10,
CHERRY CREEK SOUTH METROPOLITAN DISTRICT NO. 11,
THE PIVOTAL GROUP, INC.,
PIVOTAL PARKER INVESTMENTS, LLC, a Delaware limited liability company a/k/a Parker Investments 2009, LLC,
PIVOTAL COLORADO II, LLC,
NORTH PARKER INVESTMENTS, LLC,
KURT WOLTER,
KIMBERLY JENSEN,
GREG MCILVAIN,
MARK EAMES,
GREG EPP,
BILLY HARRIS, and
JOHN DOES 1 through 8,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants Pivotal Colorado II, LLC ("PCII") and North Parker Investments, LLC's ("North Parker") **Motion to Amend Answer** [Docket No. 100; Filed November 23, 2011] ("PCII's Motion"). Plaintiff filed a Response in opposition

to PCII's Motion on December 19, 2011 [#114]. On January 5, 2012, Defendants PCII and North Parker filed a Reply [#126]. The Motion is ripe for resolution.

This matter pertains to the Metro Defendants' alleged failure to honor agreements with Plaintiff with respect to "the construction and maintenance of certain public infrastructure." *See Scheduling Order* [#23] at 3. Plaintiff alleges that Defendant PCII petitioned the Metro Defendants' Boards of Directors to exclude certain property from the boundaries of the Metro Districts. Plaintiff further alleges that the reconfiguration of the Metro Districts' size reduced the number of tax-paying individuals within each "and rendered them incapable of discharging the indebtedness [to Plaintiff]." *See Am. Compl.* [#38] at 5.

Pursuant to PCII's Motion, PCII and North Parker seek to amend their Answer [#62] to add one additional affirmative defense: "One or more of Plaintiff's claims are barred by applicable privilege[ ]." *Motion* [#100] at 3. Specifically, they aver that "Plaintiff's interference claim may be barred, in whole or in part, by applicable constitutional privileges under the *Noerr-Pennington* doctrine."[1]  *Id.*

As a preliminary matter, the pleading amendment deadline expired on January 3, 2011. *See Minute Order* [#23]. The present Motion was filed on November 23, 2011, and, therefore, is untimely. Accordingly, Defendants PCII and North Parker must provide good cause for their failure to timely move for amendment pursuant to Fed. R. Civ. P. 16(b)(4). If good cause is shown, the Court next considers any arguments raised by the parties related to whether justice would be served by amendment. Specifically, the Court should

---

[1] In general, "the *Noerr-Pennington* doctrine stems from *federal* antitrust law and exempts from antitrust liability 'the conduct of private individuals in seeking anticompetitive action from the government.'" *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 894 (10th Cir. 2011) (emphasis in original) (quoting *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379-80 (1991)).

grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A. Good Cause to Modify the Pleading Amendment Deadline

Defendants PCII and North Parker have met the good-cause standard to modify the pleading amendment deadline pursuant to Fed. R. Civ. P. 16(b)(4), because filing an amended Answer prior to that deadline was not possible. As noted, the pleading amendment deadline expired on January 3, 2011. *See Minute Order* [#23]. On February 7, 2011, Plaintiff filed an Amended Complaint [#38] adding Defendants PCII and North Parker to the lawsuit. Defendants PCII and North Parker waived service on February 10, 2011. *See Waiver of Service* [#50]. They filed their Answer [#62] on May 2, 2011.

Defendants PCII and North Parker must "show that [they were] diligent in attempting to meet the [pleading amendment] deadline," but this standard can be met by the provision of "an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F3d 1196, 1205 & n.4 (10th Cir. 2006) (explaining that lateness itself does not justify denial of a motion to amend, but "undue" lateness does). Here, Defendants PCII and North Parker could not have met an amendment deadline that passed before they were parties to the case. Thus, the Court finds that they have provided good cause for requesting leave to amend outside of the pleading amendment deadline.

### B. Rule 15(a) Requirements

The Court next turns to Rule 15(a) and whether justice would be served by permitting amendment. As already noted, in situations where the request falls outside the

pleading amendment deadline and assuming good cause is shown, leave should generally be permitted unless the moving party unduly delayed or failed to cure, the opposing party would be unduly prejudiced, or the proposed amendment would be futile. *Foman*, 371 U.S. at 182. Plaintiff raises three of these arguments against Defendants PCII and North Parker's proposed amendment: undue delay, prejudice, and futility. *See Response* [#114] at 2, 6-7.

On February 7, 2011, Plaintiff filed an Amended Complaint [#38], adding Defendants PCII and North Parker to the lawsuit which was originally filed in state court on August 10, 2010. *See Verified Notice of Removal* [#1] at 2. In the Amended Complaint, Plaintiff alleged that, "[O]n April 13, 2009, upon petition by [PCII] the Boards approved by resolution further exclusions of property from the Metro Districts." *Am. Compl.* [#38] at 5. Plaintiff also asserted that PCII "by words or conduct, or both, intentionally caused the Metro Districts to breach their contracts with [Plaintiff]." *Id.* at 9. On May 2, 2011, Defendants PCII and North Parker filed their Answer [#62]. In their Answer, they denied Plaintiff's contention that they intentionally caused the Metro Defendants to breach their contracts with Plaintiff. *See Answer* [#62] at 8.

On June 28, 2011, Plaintiff responded to Defendant Pivotal Group, Inc's First Set of Interrogatories, Requests for Admissions and Requests for Production of Documents. *See Ex. B* [#126-2]. In that response, Plaintiff included a detailed recitation of the facts and argument underlying its claim for interference with contractual relations. *See id.* at 4-5. Defendants PCII and North Parker aver that this response, "in part, helped lead [them] to conclude that the alleged petitioning activity was likely the only 'words or conduct, or both' of PCII that could possibly qualify as improper interference. It is this petitioning activity that

PCII and North Parker now claim is privileged pursuant to the *Noerr-Pennington* doctrine/First Amendment petitioning immunity." *Reply* [#126] at 5.

### 1.   Undue Delay

Turning to Plaintiff's first argument, the Court may deny a motion to amend based on undue delay. *See Minter*, 451 F.3d at 1205.  "The important inquiry is not simply whether Plaintiff has delayed, but whether such delay is undue." *Id.* at 1206.  The Tenth Circuit "focuses primarily on the reason for the delay." *Id.*  A motion to amend is untimely if, among other reasons, the moving party has made the complaint a "moving target," is trying to "salvage a lost case by untimely suggesting new theories of recovery," is trying to present more theories to avoid dismissal, or is knowingly waiting until the eve of trial to assert new claims.  *Id.* at 1206 (citations omitted).  Other common reasons for finding undue delay include lack of adequate explanation for the delay or when a moving party knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend.  *Id.* (citations omitted).

Both parties erroneously conflate their Fed. R. Civ. P. 16(b) diligence arguments with their Fed. R. Civ. P. 15(a) undue-delay arguments.  Defendants PCII and North Parker filed their Answer [#62] on May 2, 2011.  They contend that they first learned of the applicability of the privilege upon examination of Plaintiff's discovery responses received on June 28, 2011.  They first conferred with opposing counsel about the present Motion on November 10, 2011.  *See Reply* [#126] at 8.  They filed this Motion shortly thereafter, on November 23, 2011.  The parties do not specifically address the delay between receipt of the relevant discovery material and conferral on the Motion.  Defendants PCII and North Parker do note that they spent that time "investigating the underlying facts at issue in this case," that they

"retained an expert witness and have had an opportunity to review the pleadings and discovery conducted to date, "and that they were then able to review "legal research on potential defenses to the claims asserted against them." *Motion* [#100] at 2-3.

The Court notes that Defendants PCII and North Parker conferred with Plaintiff about assertion of the additional defense more than three months before expiration of the discovery deadline. Moreover, as Plaintiff notes, the addition of a privilege defense was not a surprise to Plaintiff, because other Defendants had already raised this defense. *See, e.g.*, *Answer of Defendant Pivotal Group, Inc.* [#48] at 20. Further, during the delay, Defendant PCII and North Parker were attempting to obtain evidence related to the defense. Although Defendants clearly delayed, the Court does not find that this history evidences undue delay.

### 2. Undue Prejudice

Plaintiff next briefly argues that it would be prejudiced at this stage of the proceeding if Defendants PCII and North Parker were permitted to add a new defense. As previously noted, the Court may deny a motion to amend based on undue prejudice to the nonmoving party. *See Minter*, 451 F.3d at 1205. Plaintiff states that it would be prejudiced because: (1) the deadline for expert disclosures has passed without Plaintiff's expert's consideration of the new defense; and (2) Plaintiff has not propounded any written discovery regarding Defendants PCII and North Parker's defenses because it decided that there was no need to do so based on the defenses listed in their current Answer. *Response* [#114] at 6-7. The Court notes that, according to Defendants PCII and North Parker, Plaintiff had not propounded any written discovery, on any issue, to Defendants PCII and North Parker as of January 5, 2012. *See Reply* [#126] at 9. The Court also notes that, according to

Defendants PCII and North Parker, Plaintiff has not disclosed any experts with respect to the defense of privilege raised by any other Defendant in this lawsuit.

All things considered, under these circumstances the Court finds that Plaintiff has not demonstrated that undue prejudice will result from assertion of the new defense. *See Foman*, 371 U.S. at 182 (stating that the opposing party must be unduly prejudiced by the proposed amendment).[2]

### 3.     Futility

Finally, Plaintiff argues that the proposed amendment is futile because the *Noerr-Pennington* doctrine does not apply to the facts of this litigation. *Response* [#114] at 7. More specifically, Plaintiff asserts that the doctrine "does not apply outside the antitrust context where the fact pattern involves illegal activity by the 'petitioner,' and it does not apply where the party invoking immunity has contractually agree to give up its petitioning rights." *Id.* at 10.

The Court may deny leave to amend on the basis of futility if the proposed amendment "would be subject to dismissal for any reason." *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001). The appropriate standard for determining the viability of an affirmative defense is found in Fed. R. Civ. P. 12(f). *See Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-cv-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011). Pursuant to Fed. R. Civ. P. 12(f), the Court "may strike from a pleading an insufficient defense . . . ." "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *Unger v. U.S. West, Inc.*, 889 F. Supp. 419, 422 (D. Colo. 1995).

---

[2] The parties are warned that any request to extend the discovery deadline in light of the new defense must be made promptly and with a showing of good cause.

As noted earlier, the *Noerr-Pennington* doctrine exempts from antitrust liability "the conduct of private individuals in seeking anticompetitive action from the government." *City of Columbia*, 499 U.S. at 379-80. However, the Tenth Circuit has held that this doctrine may be used outside of the antitrust context, but only on the basis of the First Amendment right to petition. *See Cardtoons, L.C. v. Major League Baseball Players Assoc.,* 208 F.3d 885, 889 (10th Cir. 2000).

At this stage of the litigation, Plaintiff asserts that Defendants PCII and North Parker are responsible for the alleged breach of contract by the Metro Defendants because Defendant PCII petitioned the Metro Defendants to exclude certain property from their boundaries. *See Reply* [#126] at 10; *Am. Compl.* [#38] at 5. Plaintiff first argues that the *Noerr-Pennington* doctrine does not apply "where the fact pattern involves illegal activity by the 'petitioner.'" *Response* [#114] at 10. Plaintiff contends that Kurt Wolter was "a self-described 'independent contractor of [PCII],' [who] was elected to the Board of Directors for Metro Districts 2 through 11, while retaining his various positions with PCII and other Pivotal-related entities." *Id.* at 8. Plaintiff argues that the *Noerr-Pennington* defense would not apply "if [Plaintiff] were to prove Mr. Wolter engaged in illegal action by aiding and abetting a breach of fiduciary duty by his fellow directors . . . ." *Id.* at 9.

Plaintiff also argues that the *Noerr-Pennington* doctrine does not apply "where the party invoking immunity has contractually agreed to give up its petition rights." *Id.* at 10. Plaintiff argues that:

> [Plaintiff] will seek to prove [that] Mr. Wolter was elected to be a director on the Metro District Boards and thereby [became] subject to statutory fiduciary and other duties . . . and that PCII employed him to use his influence to get the Boards to ignore the Reimbursement Agreements. Because PCII employed an agent who was already statutorily and legally obligated to act in the best interests of the Metro Districts, it implicitly agreed he could not

> 'petition' the Boards on its behalf in any manner which would violate the District's previous contractual obligations.

*Id.*

Plaintiff's arguments rely on providing proof of a number of facts in support of certain legal positions, neither of which are fully formed at this juncture.  Moreover, Plaintiff has not addressed application of the *Noerr-Pennington* doctrine in the absence of proof of Mr. Wolter's alleged dual role.  Thus, Plaintiff has failed to demonstrate that "the defense cannot succeed under any circumstance."  *Unger*, 889 F. Supp. at 422.  Without taking a position as to whether the defense <u>will</u> succeed, the Court finds that adding it may not be futile under the circumstances of this case.  Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#100] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Court accepts Defendants PCII and North Parker's Answer [#100-1] for filing as of the date of this Order.

Dated:  February 7, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge